IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| PAUL MEDRANO, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLOWERS FOODS, INC., and<br>FLOWERS BAKING CO. OF EL PASO, LLC<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COLLECTIVE ACTION COMPLAINT AND JURY TRIAL DEMAND**

Plaintiff Paul Medrano ("Plaintiff"), on behalf of himself and other similarly situated individuals, by and through his undersigned attorneys, brings this collective action lawsuit against Defendants Flowers Foods, Inc. ("Flowers Foods") and Flowers Baking Co. of El Paso, LLC ("Flowers El Paso" and collectively with Flowers Foods, "Defendants"), seeking all available relief under the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*. and the New Mexico Minimum Wage Act ("NMMWA"), NMSA 1978, §§ 50-4-1 *et seq*. Plaintiff's claims under the FLSA are being asserted as a collective action pursuant to Section 16(b), 29 U.S.C. § 216(b).  Plaintiff's claims under the NMMWA are being asserted as a collective action pursuant to NMSA 1978, § 50-4-26(D).  The following allegations are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is an individual residing in Bernalillo County, New Mexico.

2. Plaintiff is an employee covered by the FLSA and the NMMWA.

3. Upon information and belief, Flowers Foods is a Georgia corporate entity doing business in New Mexico.

4. Upon information and belief, Flowers El Paso is a Texas corporate entity doing business in New Mexico.

5. Flowers Foods and Flowers El Paso are employers covered by the FLSA and the NMMWA.

6. At all times relevant to this Complaint, Plaintiff was employed by Defendants to work in Bernalillo County, New Mexico.

7. This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction, and 28 U.S.C. § 1367, supplemental jurisdiction, for the claims brought under the NMMWA.

**FACTUAL ALLEGATIONS RELEVANT TO ALL CLAIMS**

8. Flowers Foods is "one of the largest producers of packaged bakery foods in the United States" and operates more than 40 bakeries nationwide. Familiar brands owned and produced by Flowers Foods include Nature's Own, Wonder, Ms. Freshly's, and Tastycake.

9. According to its own website, in 2014, Flowers Foods had sales of $3.7 billion.

10. Defendant Flowers El Paso is a wholly owned subsidiary of Flowers Foods that operates a bakery and warehouses in Bernalillo County. Flowers Foods, by and through its subsidiaries such as Defendant Flowers El Paso, ships bakery and snack products to warehouses, from which distributors, such as Plaintiff and the others similarly situated, pick up and distribute the products to the Defendants' retail customers at the time and place specified by the Defendants.

11. Distributors hired by Flowers El Paso are integrated into Flowers Foods' existing network of operations. The work performed by Plaintiff and others similarly situated simultaneously benefited or benefits both Flowers Foods and any of its subsidiaries, including Flowers El Paso. Plaintiff and the others similarly situated were hired for the purpose of ultimately distributing products for Flowers Foods.

12. In approximately 2003, Plaintiff was hired by Flowers El Paso as a distributor servicing retail outlets in the Albuquerque area. Plaintiff was employed by the Defendants for more than a decade, until approximately August of 2015.

13. In an effort to perpetuate a scheme that would deny Plaintiff and others similarly situated the rights and benefits provided under the FLSA and the NMMWA, Defendants require all potential distributors to "purchase" a predetermined territory in support of the Defendants' efforts to classify the distributors as independent contractors. As part of that scheme, Plaintiff and others similarly situated were required to enter into a "Distributor Agreement" with Flowers El Paso. The Distributor Agreement had no specific end date and could be terminated by either party at any time with limited notice.

14. Flowers Foods markets its bakery and snack products to retailers and other grocery stores and merchants. Flowers Foods negotiates with the retailers to set virtually all material terms of the relationship with such retailers, including but not limited to (a) wholesale and retail prices for products, (b) service and delivery agreements, (c) shelf space to display products, (d) product selection, (e) promotional pricing for products, (f) the right to display promotional materials, and (g) print advertisements in retailers' newspaper ads.

15. During the entirety of his employment, Defendants required Plaintiff to service specified retail accounts, instructed him on which days he was required to deliver baked goods to those accounts, and controlled virtually all other aspects of his interaction with those retail accounts.

16. Plaintiff was required to accept Defendants' conditions of employment and strictly follow their instructions, including adherence to the pricing, policies, and procedures negotiated between Flowers Foods and its retail customers. Otherwise, Plaintiff would face termination.

17. The job as a distributor performed by Plaintiff and the others similarly situated does not require specialized skills.

18. Plaintiff was not permitted to determine his own schedule or the manner in which he worked.

19. Defendants exercised such control over Plaintiff that when Plaintiff was attending the funeral of his own wife, Ruth Medrano, a manager from Flowers called him on his cell phone and demanded that he return to work immediately.

20. Larry Baldwin, the regional president of Flowers El Paso, later referred to this incident as evidence of how dedicated Plaintiff was to his work, recalling the incident in which he had worked even on the day of his own wife's funeral.

21. As a "distributor," Plaintiff was required to purchase, insure, fuel, and maintain his own delivery vehicle. However, he was given no choice with regard to the selection of insurance, but rather simply had a deduction for insurance taken out of his bi-weekly paychecks.

22. Defendants use the Distributor Agreement contracts to shift certain costs onto its employees. Under the contract, Plaintiff was required to pay all maintenance and fuel cost for what amounted to a company vehicle and warehouse rent. However, Defendants provided Plaintiff with computer equipment, administrative support, advertisements, promotional materials, bakery trays, market advice, strategic development, and other business necessities to its employees.

23. The Distributor Agreement required Defendants to "preserve and develop the quality and marketability" of its products. However, Defendants regularly and consistently provided Plaintiff with product that was moldy, stale, or marred by rodent bite marks, or all three. On many occasions, Plaintiff was charged for the inedible and unsanitary product with which he had been provided, and he was forced to absorb the cost of the unusable product.

24. For the entirety of his employment with Defendants, Plaintiff's delivery schedule typically required Plaintiff to arrive at the factory by 4:30 a.m., and frequently resulted in his arriving home with his daily deliveries completed around 8:00 p.m.

25. Plaintiff was typically required to work 7 days a week.

26. Plaintiff and other distributors consistently worked in excess of 40 hours every week of the year. Plaintiff often worked eighty, one hundred, or even more hours on a weekly basis.

27. Plaintiff's manager, David Baxly, often made racially charged jokes about the extremely long hours worked by Plaintiff and other similarly situated employees, stating that Plaintiff and others were "working like Mexicans" or "working like niggers."

28. Each year, Flowers El Paso issued Plaintiff a W-2 form identifying the wages he had been paid that year.

29. Defendants paid Plaintiff through a complex calculation based on product sold through the various retail outlets, with deductions for product that was delivered but not sold. These deductions were in addition to various other deductions, including the deduction for insurance on Plaintiff's own vehicle. Plaintiff never received overtime compensation for any hours worked by him in excess of 40 hours in a single work week. Upon information and belief, Defendants never paid overtime compensation to any Distributors similarly situated to Plaintiff regardless of the number of hours worked.

30. Defendants represented to Plaintiffs and other distributors that they would have the opportunity to run their businesses independently, have discretion to use their business judgment, and have the ability to manage their businesses to increase profitability. Contrary to these representations, Defendants denied Plaintiff and other distributors benefits of ownership, or of any opportunities for profit. Instead, Defendants maintained all business judgment and management over the distributors' business,

including, but not limited to, the following: (a) controlling wholesale pricing, (b) negotiating retail pricing, (c) retaining the rights to establish all sales and promotions, (d) retaining the rights to change orders placed by distributors, (e) requiring distributors to pay for product they did not order, (f) requiring distributors to load the product onto their trucks, deliver it to stores, maintain the product in the store, remove the product from the store, and return it to the warehouse for credit, (g) billing distributors who did not attempt to distribute the extra product for the full wholesale price of that product, (h) maintaining the right to discipline distributors, up to and including termination, for reasons including hiring others to run their routes, taking time off work, or for refusing a specific order to deliver a product to a particular store at a particular time, (i) retaining the right to handle customer complaints against a distributor, (j) retaining the ability to withhold pay for certain specified expenses, and (k) retaining the right to unilaterally vary the standards, guidelines, and operating procedures.

     31.    After Defendants negotiated the sale of the Flowers products with major retailers, including Wal-Mart, Target, and other grocery stores, Plaintiff and others similarly situated delivered the product to store locations that were predetermined, and Plaintiff and the others similarly situated had no discretion as to what products to distribute to a particular store, whether to run sales or promotions, how frequently to service stores, or any other similar discretion that would allow Plaintiff and the others similarly situated to increase the profitability of their work. The result was that the ability of Plaintiff and the others similarly situated to earn income was tied directly to the sale and promotion of products outside their control.

32. Defendants required Plaintiff and all distributors to process all transactions through a handheld computer provided to them by Defendants.  The handheld computer controlled the product prices, maintained the customer information, and monitored business performance.

33. Defendants intentionally mischaracterized Plaintiff and the others similarly situated as independent contractors in order to deprive Plaintiff and the others similarly situated of substantial rights and benefits of employment.

34. Defendants did not pay Plaintiff or others similarly situated on the basis of hours worked, and did not pay them one and a half times a set wage for hours in excess of forty worked in a single week.

35. All employees similarly situated to Plaintiff were required to sign contracts similar to plaintiff's contract, asserting that they were "independent contractors," despite Defendants' pervasive control over the means and manner of the Plaintiff's and other distributors' work.  On the basis of these contract, and because they were misclassified as independent contractors, Plaintiff and the others similarly situated were or are denied the rights and benefits of employment, including but not limited to, overtime wages.

## COLLECTIVE ACTION ALLEGATIONS

36. Plaintiff brings Count I of this Complaint as a collective action, alleging violations of the FLSA on behalf of himself and all other similarly situated individuals who worked as distributors for Flowers Foods or Flowers El Paso in the State of New Mexico under a "Distributor Agreement" or a similar written contract, and who worked for Defendants during the period commencing three years prior to the filing of this Complaint

through the trial of this action. Count I may be brought and maintained as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) because Plaintiff's claims are similar to the claims of current and former "independent contractors" who worked for Defendants. The employees similarly situated to Plaintiff are known to Defendants and are readily identifiable through Defendants' payroll records.

37. Plaintiff brings Counts II of this case as a collective action pursuant to NMSA 1978, § 50-4-26(D), on behalf of himself and on behalf of all similarly situated employees currently and formerly employed by Flowers. The NMMWA provides a three year statute of limitations for all claims brought under the NMMWA, and also provides that employees may recover all wages owed, regardless of the date of the violation of the NMMWA, where the employer engaged in a continuing course of conduct in violating the NMMWA.

38. Plaintiff and the others similarly situated are or were employed by Defendants, had substantially similar job requirements, pay provisions, and are subject to Defendants' common practice, policy, or plan of controlling their daily job functions.

39. Defendants regularly permitted and required Plaintiff and the others similarly situated to work more than 40 hours per week without overtime compensation.

40. Upon information and belief, Defendants knew that Plaintiff and the others similarly situated performed work that required overtime pay.

41. Defendants have operated under a scheme to deprive Plaintiff and the others similarly situated of overtime compensation by failing to properly compensate them for all time worked.

42. Defendants' conduct, as set forth herein, was willful and has caused significant damages to Plaintiff and the others similarly situated.

43. Plaintiff and all other delivery drivers classified by Defendants as independent contractors but treated as employees and with wages recorded on W2 forms in New Mexico employed by Defendants are or were subject to Defendants' refusal to pay overtime wages.

44. Defendants' conduct described herein is part of a continuing course of conduct.

## COUNT I:  VIOLATION OF THE FLSA, 29 U.S.C. §§ 201 *et seq*.

45. All previous paragraphs are here incorporated as though fully set forth herein.

46. Section 207(a)(1) of the FLSA provides, in pertinent part:

> Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

47. There are no FLSA exemptions applicable to Plaintiff or to other members of the federal collective action.

48. For purposes of the FLSA, the employment practices of Defendants were and are uniform in all respects material to the claims asserted in this Complaint.

49. Plaintiff and the others similarly situated regularly worked more than 40 hours per week but did not receive overtime pay.

50. At all relevant times, Defendants have had gross operating revenues in excess of $500,000.

51. In committing the wrongful acts in violation of the FLSA, Defendants acted willfully, in that they knowingly, deliberately, and intentionally failed to pay overtime premium wages to Plaintiff and others similarly situated.

52. As a result of Defendants' failure to pay overtime premium wages, Plaintiff and the others similarly situated were damaged in an amount to be proven at trial.

53. Plaintiff demands that he and the others similarly situated be paid overtime compensation as required by the FLSA for every hour of overtime worked in any work week for which they were not compensated, plus interest, damages, penalties, and attorneys' fees as provided by law.

### **COUNT II: VIOLATION OF NMMWA, NMSA 1978. § 50-4-22**

54. All previous paragraphs are here incorporated as though fully set forth herein.

55. Plaintiff and those similarly situated are or were "employees" as that term is defined by the NMMWA.

56. Defendants are "employers" as that term is defined by the NMMWA.

57. The NMMWA entitles employees to overtime compensation at not less than "one and one-half times the employee's regular hourly rate of pay for all hours worked in excess of forty hours." NMSA 1978, § 50-4-22.

58. Defendants violated the NMMWA by failing to pay Plaintiff and the collective class members any compensation, including overtime compensation, for hours worked over 40 per week.

59. Plaintiff's position as a distributor does not meet the standards for exemption under the NMMWA.

60. Plaintiff and those similarly situated have been damaged in an amount equal to their unpaid overtime wages.

61. Defendants, through their policies and practices described above, willfully violated the NMMWA, including but not limited to by failing to pay Plaintiff and others similarly situated their earned wages for all hours worked and by failing to pay Plaintiff and others similarly situated overtime pay for all hours worked in excess of forty hours.

62. Plaintiff and others similarly situated are entitled to treble damages plus statutory interest, reasonable attorneys' fees, and other appropriate injunctive relief.

## **Jury Demand**

63. Plaintiff and others similarly situated demand a jury on all issues to be tried in this matter.

**WHEREFORE,** Plaintiff, on behalf of himself and other members of the collective class, seeks the following relief against Defendants:

A. Designation of this action as a collective action on behalf of Plaintiff and those similarly situated, and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) and pursuant to the NMMWA to all those similarly situated apprising them of the pendency of

this action and permitting them to assert timely claims in this action by filing individual consent forms;

  B. Judgment that Plaintiff and those similarly situated are non-exempt employees entitled to protection under the FLSA;

  C. Judgment for violation of the overtime provisions of the FLSA and the NMMWA;

  D. Judgment that Defendants' violations of the FLSA and the NMMWA were willful, not in good faith, and not based on reasonable grounds;

  E. Judgment that Defendants compensate Plaintiff and the other members of the collective class for the reasonable value of the benefits Plaintiff and the other members of the collective class provided to Defendants.

  F. Pursuant to the FLSA, that Plaintiff and the other members of the collective class be:

    i. Awarded unpaid overtime wages at overtime rates for all overtime work as described in this Complaint;

    ii. Awarded liquidated damages, attorneys' fees and costs;

    iii. Awarded punitive damages in an amount to be determined at trial; and

    iv. Awarded any such other and further relief as the Court deems just and proper.

  G. Pursuant to the NMMWA, that Plaintiff and the other members of the collective class be:

    i. Awarded unpaid overtime wages plus treble damages;

ii. Awarded lost wages and liquidated damages;

iii. Awarded pre- and post-judgment interest as permitted by law;

iv. Awarded costs and reasonable attorneys' fees pursuant to NMSA 1978, § 50-4-26(E);

v. Awarded equitable relief in the form of payment for state and federal income tax consequences for receiving unpaid wages covering more than one calendar year; and

vi. Awarded any such other and further relief as the Court deems just and proper.

    Respectfully Submitted,

    JONES, SNEAD, WERTHEIM
     & CLIFFORD, P.A.

    By: */s/ Jenny F. Kaufman*
        JERRY TODD WERTHEIM
        SAMUEL C. WOLF
        JENNY F. KAUFMAN
        1800 Old Pecos Trail
        Post Office Box 2228
        Santa Fe, New Mexico 87504
        Tel. (505) 982-0011
        Fax. (505) 989-6288