IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARTIN F. CORONADO, JR., on his own behalf and
on behalf of all others similarly situated,

                          Plaintiff,

vs.                                                                                 Civ. No.  16-350 JCH/KK

FLOWERS FOODS, INC., and
FLOWERS BAKING CO. OF
EL PASO, LLC,

                          Defendants.

**MEMORANDUM OPINION AND ORDER**

This case is before the Court on *Defendants' Amended Motion to Exclude the Testimony of Plaintiffs' Expert Under Federal Rule of Evidence 702* [Doc. 161], in which Defendants ask the Court to prohibit the testimony on damages of Plaintiffs' expert economist Brian McDonald. Plaintiffs have filed a response [Doc. 170] and Defendants have replied [Doc. 176]. After reviewing these briefs and considering the law and the facts, the Court concludes that portions of McDonald's methodology are inconsistent with the Fair Labor Standards Act and therefore the motion will be granted in part.

**LEGAL STANDARD**

Opinions based on scientific, technical, or specialized knowledge are governed by Federal Rule of Evidence 702. Rule 702 states that a witness qualified as an expert by knowledge, skill, experience, training, or education may offer opinion testimony if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

>  (b) the testimony is based on sufficient facts or data;
>
>  (c) the testimony is the product of reliable principles and methods; and
>
>  (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702

Rule 702 imposes upon the district court a "gatekeeping obligation" to ensure that expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). A court's gatekeeping function, however, does not replace the traditional adversary system and the role of the jury. *Cohen v. Lockwood*, 2004 WL 763961, at *2 (D. Kan. 2004). Where there are questions related to the bases and sources of an expert's opinion, these issues go to the weight to be assigned to that opinion—rather than admissibility—and are for the trier of fact to determine. *Id*.

The Tenth Circuit employs a two-part test to determine admissibility. *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). First, the court determines whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. *Id*. Second, the court "must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact." *Id*.

## DISCUSSION

This is a case brought by driver/distributors of baked goods under the Fair Labor Standards Act ("FLSA") who claim that the Defendants deprived them of overtime compensation when they classified and paid them as independent contractors instead of as employees. Plaintiffs' expert on damages, economist Brian McDonald, provided an expert report in which he calculated damages for two plaintiffs, Paul Medrano (who is no longer a plaintiff in this case) and Joe Ruacho. For

each of the two, McDonald calculated the damages in two parts: incurred costs and expenses, and lost wages. Defendants dispute the reliability and relevance of the methodology[1]—which presumably would be extended to all the remaining plaintiffs at a trial—that MacDonald used in calculating these damages.

**I.      Damages Generally Under the FLSA**

The FLSA calculates the value of the employee's unpaid overtime wages at "one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The Code of Federal Regulations computes the "regular rate" for purposes of the FLSA by "dividing the total remuneration paid to an employee in the workweek by the total number of hours of work in the workweek for which such compensation was paid." 5 C.F.R. § 551.511(a).

Any employer who violates §§ 206 or 207 of the FLSA may be liable to the affected employee "in the amount of their unpaid minimum wages, or unpaid overtime compensation, as the case may be, and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The purpose of the liquidated damages provision "is not penal in nature but constitutes compensation for the retention of a workman's pay which might result in damages too obscure and difficult of proof for estimate." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945). However, if the employer can establish that its conduct was both in good faith and based on a reasonable belief that its conduct was not in violation of the FLSA, the court may, in its discretion, award less or no liquidated damages. *See* 29 U.S.C. § 260; *Mumby v. Pure Energy Servs. (USA)*, 636 F.3d 1266,

---

[1] In the introductory paragraph of their motion, Defendants make general reference to McDonald's lack of experience in testifying in FLSA cases as well as his lack of expertise with that statute. [*See* Doc. 161 at 1]. However, in the body of the motion, Defendants attack only the relevance of McDonald's methodology in an FLSA case. Therefore, the Court will not address McDonald's qualifications in this opinion.

1272 (10th Cir. 2011). While the reasonableness requirement is an objective standard, the good-faith inquiry is subjective, requiring an "honest intention to ascertain and follow the dictates" of the FLSA.

As an evidentiary matter, plaintiffs may testify as to facts supporting their damages calculations and the total amounts they allege to be owed. *See generally Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1267-68 (11th Cir. 2008) (explaining that, at trial, plaintiffs testified as to facts supporting damages awards such as salaries and hours worked and jury was instructed on how to calculate regular rate of pay and damages) (reversing jury verdict because it was "outside the boundaries" of evidence and jury instructions as to proper calculation); *Sanders v. Elephant Butte Irrigation Dist. of N.M,*, 112 F.3d 468, 472 (10th Cir. 1997) (explaining, in FLSA overtime case where employer failed to keep time records, "the court was entitled to rely upon figures presented by plaintiff, supported by his evidence").

**II.     McDonald's Calculation of Damages for Business Costs**

In his report [Doc. 170-2] setting forth his two-part model, McDonald includes as damages "an estimate of the costs and expenses incurred by the plaintiffs as delivery truck drivers/distributors for Flowers" that "should have been borne by the employer." *Id*. at 1. To estimate those costs, McDonald used the Distributor Weekly Settlement Statement, which includes a column of data titled Total Business Expense. McDonald summed up these weekly Total Business Expense figures over the course of a year and then subtracted those expenses that would have been borne by the plaintiffs had they been categorized as employees instead of independent contractors, such as FICA tax, FICA Adjusted Tax, and the cost of health, life, and disability insurance premiums. *Id*. at 4. In that way, McDonald arrived at a figure for total business costs for each year.

Defendants argue that damages for "incurred costs and expenses" are not allowable under the FLSA. They point to 29 U.S.C. § 216(b), which provides for damages for, *inter alia*, unpaid overtime compensation, an additional equal amount of liquidated damages, attorney's fees, and costs. Pointing out that "costs and expenses" are not an enumerated category of damages under the statute, Defendants liken these damages to hedonic damages, which are not permitted under the FLSA. Thus, they say that McDonald's analysis of costs and expenses is irrelevant to Plaintiffs' damages and must be excluded.

In response, Plaintiffs argue that the analysis of their costs and expenses is relevant because it will assist the jury in understanding the amount of money they actually earned from their employer, free and clear—a calculation that requires an understanding of the expenses borne by the distributors after they received payments from Defendants. *See* Doc. 170 at 6. Only when one determines actual earnings may one properly calculate the rate of overtime pay. Plaintiffs contend that the costs and expenses are helpful to an assessment of liquidated damages, insofar as they show that Defendants acted in bad faith by requiring the distributors to shoulder costs to an unreasonable extent. *Id*. at 11. And, whether Defendants committed a "willful violation" of the FLSA determines whether the statute of limitations is two years (the ordinary limitations period) or three. *Id*. at 11-12. Finally, Plaintiffs also note that under both *Daubert* and Rule 702, the rejection of expert testimony is the exception rather than the rule and both favor the liberal admission of expert evidence.

The Court concludes that the evidence of business costs and expenses that Defendants shifted to distributors is relevant and therefore admissible. Defendants are correct in noting that business expenses are not, in and of themselves, a recoverable element of damages under the FLSA. For that reason, Plaintiffs will not be permitted to argue at trial that they should be permitted

5

to directly recover these costs as damages. In this respect, the motion is granted in part. Despite that, evidence of these expenses is relevant to determining what wages the distributors actually earned—a figure necessary to calculate the rate of overtime pay. Defendants attempt to distinguish the cases cited by Plaintiffs on the grounds that they were minimum wage cases. *See* Doc. 176 at 5. However, in both minimum wage and overtime cases, it is necessary to understand the employee's regular rate of pay, and a determination of business costs and expenses is relevant both. According to regulations adopted under the FLSA:

> Whether in cash or in facilities, "wages" cannot be considered to have been paid by the employer and received by the employee unless they are paid finally and unconditionally or "free and clear." . . . For example, if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work, there would be a violation of the Act in any workweek when the cost of such tools purchased by the employee cuts into the minimum *or overtime wages* required to be paid him under the Act.

29 C.F.R. § 531.35 (emphasis added). *See also Arriaga v. Florida Pac. Farms, L.L.C.*, 305 F.3d 1228, 1236 (11th Cir. 2002) ("there is no legal difference between deducting a cost directly from the worker's wages and shifting a cost, which they could not deduct, for the employee to bear."). Similarly, the FLSA regulations provide that when an employer reimburses an employee for business expenses, the sums that are reimbursed are not counted in that employee's regular rate of pay. 29 C.F.R. § 778.217(a) states that when an employee incurs expenses on his employer's behalf, payments made by the employer to cover such expenses are not included in the employee's regular rate for purposes of calculating overtime because such payment is not compensation for services rendered by the employees during any hours worked in the workweek. Thus, the Court concludes that McDonald's testimony on this topic is relevant to determining the Plaintiffs' regular rate of pay and therefore admissible—though of course subject to cross examination.

Similarly, Plaintiffs may offer this evidence to support the inference that in shifting costs to the Plaintiffs, Defendants committed a willful violation of the FLSA thereby entitling Plaintiffs to both liquidated damages and the longer statute of limitations. Whether Plaintiffs can successfully convince the jury that Defendants acted willfully is yet to be seen, but at this stage it is not for the Court to exclude evidence offered in support of that claim. This portion of the motion will be denied.

### III.    McDonald's Calculation of Damages for Lost Wages

The second part of McDonald's report is a calculation of lost wages, which he defines as the "difference between the wages which should have been paid to each plaintiff, had they been properly classified, and the actual compensation or wages paid by Flowers to each plaintiff." Doc. 170-2 at 5. To calculate an estimate of the actual compensation paid to each plaintiff, McDonald again used the Weekly Settlement Statement, this time focusing on a column of data known as the Weekly Distributor Balance Amount. To avoid double counting of damages, McDonald added in the actual costs and expenses deducted by Flowers and subtracted the adjusted costs and expenses deducted by Flowers. It appears that Defendants do not take issue with McDonald's methodology in calculating actual compensation.

However, in calculating the other part of the formula—that is, the wages which should have been paid to each plaintiff—McDonald looked to market data for the compensation earned by others in similar jobs. McDonald concluded that "a reasonable estimate of the competitive market wage which should have been paid to each plaintiff" could be "based upon wages paid for the occupational classification of 'delivery truck driver and driver/sales workers'" in the U.S. Bureau of Labor Statistics' Occupational Employment Statistics ("OES") program. *Id*. at 6. McDonald used this data to find the "straight time" hourly average wage that each plaintiff should

have been paid per hour for up to 40 hours per week for an entire year. To calculate the overtime pay plaintiffs should have earned, the McDonald multiplied this hourly "straight time" amount by 1.5 and again by the estimated number of hours of overtime per week that each plaintiff worked over the course of a year. Finally, McDonald concluded that the wages the plaintiffs should have been paid were the sum of the annual straight time wages plus the annual overtime wages calculated as described in this paragraph. *Id*. at 7.

Defendants argue that the foregoing methodology is at odds with both Section 7(a) of the FLSA and the corresponding regulations. First, they argue that overtime must be compensated at a rate not less than 1.5 times the regular rate at which the employee is actually employed, and that the "regular rate" has a specific statutory definition that "must be drawn from what happens under the employment contract." They contend one may not substitute an estimate of a competitive market wage for the employee's actual regular rate of pay. Doc. 161 at 8-9. Second, they argue that under the regulations, an employee's regular hourly rate of pay must be determined by dividing the total compensation in a given workweek by the total number of hours actually worked in that workweek. Further, they contend that under the FLSA these figures cannot be aggregated and averaged over the course of an entire year. *Id*. at 9-10.

In response, Plaintiffs contend that their compensation fluctuated wildly from week to week and was affected by how much product was sold; how much the distributors "paid" for product; whether new stores were opened; the costs of insurance, transportation, and gas; and the cost of paying Defendants for their territories. Doc. 170 at 8. They argue that Defendants' records do not accurately reflect wages earned or hours worked, and that "information about the average earnings of an employee performing the tasks that Plaintiffs performed will be largely helpful to a jury that is tasked with estimating damages from representative data and varying numbers among

Plaintiffs." Doc. 170 at 9. Finally, they point out that the defense's damages expert used a similar methodology to estimate damages and that he too relied on statistics from the OES program. Thus, they contend it would be improper to exclude McDonald's report but allow the jury to hear similar testimony from the Defendants' expert.[2] Similar to what they argued with costs and expenses, Plaintiffs contend that this evidence will support their claim for liquidated damages and a longer limitations period by showing the extent to which Defendants benefitted from misclassifying distributors as independent contractors. *Id*. at 11.

The regulations promulgated under the FLSA support the Defendants' argument. For example, 29 C.F.R. § 778.108 states that the "'regular rate' of pay under the Act cannot be left to a declaration by the parties as to what is to be treated as the regular rate for an employee; it must be drawn from what happens under the employment contract. The Supreme Court has described it as the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed—an actual fact.'" *Id*. (internal citations omitted). Thus, to calculate the regular rate of pay, the finder of fact must determine what compensation the employee was actually paid; the regulation does not appear to make room for the use of a more general, statistical reference point based on a particular job sector in place of a calculation based on what transpired between the parties. The regulations also make clear that the "regular rate" of compensation can be determined not only by an hourly rate of pay, but also through commissions (which is essentially what happened in this case) or by a salary or piece-rate. 29 C.F.R. § 778.109. Specifically, "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment

---

[2] Plaintiffs have not filed a motion to exclude Defendants' expert, so the Court will not opine on the admissibility of his testimony at this time other than to say that it will be consistent in its treatment of both experts.

9

(except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." *Id*. This regulation demands a weekly calculation of the regular rate of pay, as opposed by one based upon aggregated *annual* earnings, which is the method employed by McDonald. That conclusion is borne out by 29 C.F.R. § 778.118, which sets forth the method of calculating the regular rate as well as the overtime rate for employees who are paid by commission:

> When the commission is paid on a weekly basis, it is added to the employee's other earnings for that workweek ..., and the total is divided by the total number of hours worked in the workweek to obtain the employee's regular hourly rate for the particular workweek. The employee must then be paid extra compensation at one-half of that rate for each hour worked in excess of the applicable maximum hours standard.

As Defendants point out, nothing in the statute or its regulations allows computation of an employee's regular hourly rate or overtime rate by looking outside the employment relationship to what other people in comparable jobs are paid. In addition, the Plaintiffs have cited no legal support for utilizing such a methodology. Therefore, insofar as it relies upon statistics from the OES as opposed to the evidence specific to this case, the Court concludes that McDonald's method is inconsistent with the FLSA and therefore inadmissible.

Unfortunately, both sides seem to agree that there is inadequate data regarding hours worked by the Plaintiffs—a piece of information that is crucial to determining both the regular rate and overtime. That is often true in FLSA cases, and for that reason courts allow plaintiffs to testify regarding their best estimations of hours worked. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946) (approving the use of employee estimates of uncompensated time where the employer failed to maintain accurate records) (superseded by statute on other grounds); *Hodgson v. Humphries*, 454 F.2d 1279, 1283 (10th Cir. 1972) (affirming the investigator's use of

employees' estimations of the amount of hours worked); *McGrath v. Central Masonry Corp.*, 2009 WL 3158131, at *7 (D. Colo. Sept. 29, 2009) (concluding that the plaintiff's estimation of the number of overtime hours he worked on a weekly basis satisfied the deferential standard in *Mt. Clemens Pottery Co* .); *Chao v. First Nat'l Lending Corp.*, 516 F. Supp. 2d 895, 901-02 (N.D. Ohio Mar. 31, 2006) (finding that when the defendants did not provide records to calculate back wages, comparing the information gained from interviews of employees provided sufficient evidence).

In light of the foregoing,

**IT IS THEREFORE ORDERED** that *Defendants' Amended Motion to Exclude the Testimony of Plaintiffs' Expert Under Federal Rule of Evidence 702* [Doc. 161] is **GRANTED IN PART** and **DENIED IN PART** as described herein.

_____
SENIOR UNITED STATES DISTRICT JUDGE